UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| DWAYNE T. SPENCER, et al., | ) |  |
|---|---|---|
| Plaintiffs, | ) |  |
| v. | ) | NO. 2:20-cv-00033 |
| CARACAL INTERNATIONAL, LLC, et al., | ) |  |
| Defendants. | ) |  |

**MEMORANDUM OPINION**

Dalin Spencer died at age nineteen after dropping a pistol on the floor which, upon impact, discharged a bullet that hit him in the chest. (Doc. No. 77 at 90). Dalin's parents, Dwayne and Tammy Spencer, sued Steyr Arms, Inc., Caracal International, LLC, and Caracal USA, LLC, in connection with Dalin's death. (Id. at 23–24). The Spencers allege the defendants manufactured and distributed the gun that killed Dalin in an unreasonably dangerous condition. (Id.).

Before the Court is Steyr's Motion to Dismiss Plaintiffs' Third Amended Complaint.[1] (Doc. No. 84). The motion argues the Spencers fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[2] (Id. at 1). Steyr asserts that the Tennessee Products Liability Act of 1978 ("TPLA") prohibits the Spencers' claims against Steyr because Steyr was merely a seller, not a manufacturer, of the gun that killed Dalin. (Id.). Steyr also contends that the request for punitive damages is statutorily barred. (Doc. No. 84-1 at 13). For the reasons that follow, the Court will deny Steyr's motion.

---

[1] The Court will refer to the Third Amended Complaint (Doc. No. 77) as the "Complaint" hereafter.

[2] The Court will refer to the Federal Rules of Civil Procedure as the "Rules" hereafter.

1

## I.    FACTUAL ALLEGATIONS[3]

### A.    Dalin Spencer's Death

On November 9, 2018, deputies of the Putnam County Sheriff's Office ("Sheriff's Office") were dispatched to Dalin Spencer's home at 1756 Heathrow Drive in Cookeville, Tennessee, in response to reports that a man there had suffered a gunshot wound. (Doc. No. 77 at 88). Upon arrival, the deputies discovered Dalin lying in a hallway in a pool of blood. (Id.). A man later identified as Cole Schiff was attempting to aid Dalin by applying pressure to the wound on the upper right side of his chest. (Id.). There was a black automatic pistol, still in its holster, on the floor near Dalin. (Id.). The pistol was a 9mm Caracal Model F handgun with a serial number of LY426 (the "LY426 Pistol").

The deputies began to administer first aid to Dalin, relieving Cole. (Id. at 88–89). Cole was taken to the living room of the residence. (Id. at 88). He was later interviewed by Major Terry Hembree of the Sheriff's Office. (Id. at 90). Per Cole, he had been playing video games in a bedroom of Dalin's house when he heard Dalin enter the residence. (Id.). Moments later, he heard a gunshot, and entered the hallway to investigate. (Id.). Cole found Dalin there, wounded, lying on the floor. (Id.). Dalin told Cole, "I dropped the gun and it went off." (Id.).

Eventually, EMS arrived and transported Dalin to a landing zone so he could be flown to the hospital in a helicopter. (Id. at 88). However, Dalin's condition was deteriorating quickly, and EMS decided he could not be transported by air. (Id.). Dalin was then taken by ambulance to the Cookeville Regional Medical Center. (Id.). Shortly thereafter, Dalin died. (Id.)

---

[3] The background information and facts outlined in this Memorandum Opinion are drawn only from the Complaint and its exhibits and are accepted as true for the purposes of ruling on this motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2

B.  The LY426 Pistol

On November 10, 2018, the day after Dalin's death, Investigator Chad Martin of the Sheriff's Office began an investigation into the origins of the LY426 Pistol. (Id. at 91). He discovered that Caracal Model F handguns, like the LY426 Pistol, had previously been recalled based on their faulty trigger mechanisms. (Id.). Due to their faulty trigger mechanisms, Model Fs "could fire when dropped onto a hard surface with a round in the chamber." (Id.).

On November 16, 2018, Investigator Martin contacted Caracal USA regarding the LY426 Pistol. (Id.). The following day, Jeffrey Spalding, who works for both Caracal International and Caracal USA (the "Caracal Defendants"), contacted Investigator Martin. (Id. at 1, 91). Mr. Spalding told Investigator Martin that the LY426 Pistol "was indeed one of the firearms that had been recalled," and that "recall notices had been sent out in October of 2012 by Caracal International." (Id. at 91). The recall notices asked owners of Caracal Model F handguns to arrange to have the pistols' trigger units replaced. (Id. at 95–97). According to Mr. Spalding, the LY426 Pistol "had not been sent back to the manufacturer to have the trigger unit replaced." (Id. at 91). Later, Mr. Spalding emailed Investigator Martin a list of all the companies through which the LY426 Pistol had passed. (Id.). The LY426 Pistol had traveled from Caracal International, to Waffen Works USA, to Steyr, to Davidson's, Inc., to S&R Guns, the last of which sold the pistol to Dwayne Spencer. (Id. at 14).

C.  The Relationship Between Steyr Arms, Caracal USA, and Caracal International

The Complaint asserts that Steyr, Caracal USA, and Caracal International have a "principal / agent, partnership, joint venture and / or 'alter-ego' relationship, by which they did . . . and may continue to . . . assemble, manufacture, test, promote, market and distribute [guns] in the United

3

States."[4] (Id. at 22). Through that relationship, the defendants allegedly "assembled, manufactured, tested, marketed and distributed" the LY426 Pistol. (Id. at 23).

The Complaint alleges several ways in which Caracal USA and Caracal International are connected to establish their close working relationship. For example, Caracal USA is a "wholly owned subsidiary of Caracal International" and serves as an "importer and manufacturer of Caracal products in the United States." (Id.). Further, Caracal USA and Caracal International have overlapping personnel. Mr. Spalding serves both as US Market Manager for Caracal International and as President/General Manager of Caracal USA. (Id. at 1). And in his role at Caracal International, Mr. Spalding is "responsible for oversight of all operations within the United Sates [sic] on behalf of Defendant Caracal International." (Id. at 2).

The Complaint also alleges facts supporting its claim regarding the close connection between Steyr and the Caracal Defendants. It notes that Steyr and Caracal USA share the same address at 7661 Commerce Lane in Trussville, Alabama, which "appears to be a manufacturing and warehouse facility," and is the address from which the recall notices regarding Caracal Model F pistols were sent. (Id. at 10, 18). The Complaint also alleges that Steyr and Caracal USA—like Caracal USA and Caracal International—have overlapping personnel. Indeed, it is alleged that the Caracal Defendants "named the initial director of Steyr Arms, Inc. (Scott O'Brien) as the Registered Agent for Defendant Caracal USA, LLC." (Id. at 9).

---

[4] This allegation contains both legal conclusions and factual assertions. Although the Court accepts the factual assertions as true for the purposes of its analysis, it does not accept the legal conclusions as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

### D. Procedural History

The Spencers originally filed suit on August 8, 2019, in the Circuit Court for Putnam County, Tennessee. (Doc. No. 1 at 2). On June 22, 2020, Caracal International removed the case to this Court. (Id. at 1). The Spencers subsequently filed the Third Amended Complaint on September 24, 2020. (Doc. No. 77). Steyr moved to dismiss the Complaint on October 8, 2020. (Doc. No. 84).

## II. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must meet Rule 8(a)(2)'s pleading standard. See Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020). Rule 8(a)(2) requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Taken together, the "factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Ashcroft 556 U.S. at 678). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

In reviewing a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016). Then, the court must "take all of those facts and inferences" and determine whether they "plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d

5

575, 581 (6th Cir. 2018). If the complaint's claim for relief "is at all plausible (beyond a wing and a prayer)," then the court must deny the motion to dismiss and permit the case to proceed. Id.

### III. ANALYSIS

Steyr has moved to dismiss the Spencers' claims under the TPLA, which generally bars product liability suits against non-manufacturing sellers of defective devices. (Doc. No. 84-1 at 1). Steyr also asks the Court to dismiss the Spencers' claim for punitive damages as a matter of law. (Id. at 13). For the reasons outlined below, the Court disagrees with Steyr's arguments.

#### A. The TPLA Permits Product Liability Suits Against "Manufacturers" of Defective Products and Limits Suits Against "Sellers" of Defective Products.

The TPLA limits how and when plaintiffs may bring product liability lawsuits. See Tenn. Code Ann. § 29-28-106. In general, it bars actions "against any seller" of a product unless the seller is also a "manufacturer" of the product. Id. The term "seller" includes "a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product." Id. § 29-28-102. The term "manufacturer" means "the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts." Id.

The TPLA sets forth five exceptions to its general bar on lawsuits targeting sellers of defective products. Id. § 29-28-106. The exceptions permit lawsuits against sellers in the following circumstances: (1) the seller "exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought"; (2) the seller "[a]ltered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought"; (3) the seller "gave an express warranty" as defined by the Tennessee Code; (4) the "manufacturer or distributor of the product or part in question is not subject to service of process"; or (5) the "manufacturer has been judicially declared insolvent." Id.

B.  The Complaint Plausibly Alleges that Steyr Arms Was a "Manufacturer" of the LY426 Pistol.

Steyr contends that the TPLA bars the Spencers' claims because the Complaint does not "plausibly allege that Steyr was a 'manufacturer'" of the LY426 Pistol. (Doc. No 84-1 at 7). Steyr quotes the Complaint's allegations that "Caracal 'component parts *may have been* shipped or assembled by [Steyr] . . . to become' the subject Caracal Pistol," and that "*all defendants* are strictly liable for having 'assembled, manufactured, tested, marketed and distributed' the subject Caracal Pistol." (Id.). Steyr asserts that these allegations are "conclusory," and insufficient to avoid dismissal. (Id.).

Steyr's argument fails because the Complaint's allegations are not conclusory. Whether an allegation is "conclusory" depends on whether it is accompanied by sufficiently pled "factual support." Meeks v. Larsen, 611 F. App'x 277, 283 (6th Cir. 2015). In reviewing whether a complaint's allegations have sufficient factual support, courts must consider the complaint in its entirety. See Martin v. Lake Cty. Sewer Co., 269 F.3d 673, 676 (6th Cir. 2001) (noting that courts "must consider *all* of the plaintiff's factual allegations as true" when evaluating a motion to dismiss) (emphasis added). Here, the Complaint includes sufficient factual support for its claim that Steyr and the Caracal Defendants may have had "a principal / agent, partnership, joint venture and / or 'alter-ego' relationship" when they manufactured and distributed the LY426 Pistol. (Doc. No. 77 at 2). The Complaint alleges, for instance, that Caracal USA is the "exclusive importer and manufacturer of Caracal products in the United States," that Caracal USA and Steyr have overlapping personnel, that Caracal USA and Steyr share an address at a manufacturing center, and that the recall notices regarding Caracal Model F pistols (like the LY426 Pistol) were sent from that shared address. (Doc. No. 77 at 1–2, 9–10, 18, 22–23).

Accepting these facts as true, and drawing all reasonable inferences in the Spencers' favor, it is plausible that Steyr was involved in manufacturing the LY426 Pistol. The Court emphasizes that it is "required at the Rule 12(b)(6) stage to construe the complaint generously towards the plaintiff." Blackwell, 979 F.3d at 525. And the "pleading standard is generally construed quite liberally." Id. at 524. So although the Spencers do not present factual allegations that overwhelmingly point to Steyr's involvement in the manufacturing process, they have alleged enough facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. It is plausible, for example, that Steyr assembled component parts shipped to the United States by Caracal International at the address shared by Steyr and Caracal USA. It is also plausible that Steyr, through its close relationship with the Caracal Defendants, was involved in designing the LY426 Pistol. Such facts, if ultimately proven, may qualify Steyr as a "manufacturer" under the TPLA, making it a proper target of the Spencers' lawsuit. Tenn. Code Ann. § 29-28-102; see also Davis v. Komatsu Am. Indus. Corp., 19 F. App'x 253, 254–55 (6th Cir. 2001) (reversing district court's grant of summary judgment where issue of fact remained as to whether defendant "was involved with the design" of a defective product).

Because it is plausible that Steyr was a manufacturer of the LY426 Pistol under the TPLA's definition, it is appropriate for the parties to "use discovery to develop more facts." Minges v. Butler Cty. Agr. Soc., 585 F. App'x 879, 880–81 (6th Cir. 2014) (denying motion to dismiss where a "fact-bound inquiry might come out in the [plaintiffs'] favor" and explaining that "uncertainty does not mean that the [defendant] automatically wins as a result"); cf. Rollins v. Cherokee Warehouses, Inc., 635 F. Supp. 136, 139 (E.D. Tenn. 1986) (denying summary judgment because there were "factual issues that the parties ha[d] not yet explored" and it was "not clear whether [defendant] was a 'manufacturer' of [a] forklift" under the TPLA).

The authority Steyr offers does not undermine this conclusion. Steyr cites Steverson v. Walmart, which concerned Verna and Davis Steverson's allegation that "an air conditioning unit the Steversons purchased from Walmart had malfunctioned, flooding the Steversons' home and causing mold damage that affected their physical health." No. 3:19-CV-00140, 2020 WL 4700831, at *1 (M.D. Tenn. Aug. 13, 2020), report and recommendation adopted, No. 3:19-CV-00140, 2020 WL 5816245 (M.D. Tenn. Sept. 30, 2020). The Court dismissed the complaint under the TPLA because the Steversons' allegations that "*all* of the defendants [were] responsible for designing, manufacturing, selling, and marketing the AC unit [were] conclusory." Id. at *4. Steyr implies this case is analogous to Steverson based on the Complaint's supposedly "conclusory" allegations. (Doc. No 84-1 at 7).

The Court finds that Steverson is inapposite. The plaintiffs in Steverson offered *no* factual support for their claim that "all defendants" were manufacturers, which is why their complaint was "conclusory." See 2020 WL 4700831, at *4; see also 2020 WL 5816245, at *1 (adopting the Magistrate Judge's recommendation that the Court dismiss the plaintiffs' lawsuit and explaining that the plaintiffs "d[id] not provide any factual support" for their allegation that Walmart was a manufacturer under the TPLA). That is not the case here. As discussed, the Spencers have alleged facts supporting their claim that Steyr is a manufacturer of the LY426 Pistol as defined by the TPLA. Because legal assertions adequately "supported by factual allegations" are not conclusory, Ashcroft, 556 U.S. at 679, Steverson does not undermine the Court's conclusion that the Spencers have adequately stated a claim for which relief can be granted.

Steyr's argument that the Complaint's exhibits weigh in favor of dismissal also falls short. Steyr points to a Sheriff's Office report regarding Dalin's death that describes the LY426 Pistol as a "Caracal pistol," and a letter from Caracal USA that identifies Caracal International as the pistol's

9

manufacturer. (Doc. No. 84-1 at 8). Steyr argues these documents establish that Steyr was *not* a manufacturer of the LY426 Pistol, and notes that "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (Id. at 9 (quoting Cates v. Crystal Clear Technologies, LLC, 874 F.3d 530 (6th Cir. 2017))).

In fact, the exhibits identified by Steyr do not contradict the allegations in the Complaint, and therefore do not support dismissal. More than one entity may be involved in the manufacture of an item under the TPLA. See Rollins, 635 F. Supp. at 139 (explaining that "the term 'manufacturer' allows for an equitable apportionment of liability" among multiple manufacturing entities under the TPLA). The plain text of the TPLA makes this clear by defining "manufacturer" broadly to include "the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts." Tenn. Code Ann. § 29-28-102. The exhibits indicating that Caracal International was a manufacturer of the LY426 Pistol simply do not rule out the possibility that Steyr was also involved in the manufacturing process under the TPLA.

The exhibits identifying Caracal International as a manufacturer of the LY426 Pistol also do not contradict the Complaint for the simple reason that the Complaint clearly alleges Caracal International was a manufacturer of the LY426 Pistol. (Doc. No. 77 at 22–23). The Complaint also pleads facts supporting the inference that Caracal International, Caracal USA, and Steyr are functionally one entity based on their overlapping personnel, physical addresses, and similar missions. See Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 737 (6th Cir. 2003) (plaintiffs "stated a prima facie case of alter-ego liability" where they alleged defendant companies "operate[d] from the exact same location," "engaged in the very same industry," and "share[d] the same management and supervision"). Because the exhibits identified by Steyr do not contradict the allegations in the Complaint, dismissal is not warranted.

10

C. <u>The Complaint Plausibly Alleges Steyr Fits an Exception to the TPLA's Prohibition on Suits Against Non-Manufacturing Sellers of Defective Devices.</u>

Steyr also argues that the Complaint does not sufficiently allege that Steyr falls within any exception to the TPLA's bar on lawsuits against non-manufacturing sellers of defective devices. (Doc. No. 84-1 at 10–12). Steyr's argument on this point is immaterial to the Court's decision to deny dismissal, because the Court has already concluded that the Complaint sufficiently alleges Steyr was a manufacturer of the LY426 Pistol under the TPLA. Regardless, the Court notes the Complaint has alleged facts that, viewed in the light most favorable to the Spencers, show Steyr fits the TPLA's exception for sellers that "exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought." Tenn. Code Ann. § 29-28-106. For the same reasons that it is plausible Steyr is a manufacturer of the LY426 Pistol (outlined above), it is plausible Steyr exercised "substantial control" over the aspect of the "design, testing, manufacture, packaging or labeling" of the pistol that caused Dalin's death.

D. <u>The Complaint's Claim for Punitive Damages Survives Steyr's Motion to Dismiss.</u>

Steyr argues that two sections of the Tennessee Code, and several cases, require the Court to dismiss the Complaint's demand for punitive damages. (Doc. No. 84-1 at 13–14). The Court finds that neither Steyr's authority, nor any other relevant authority, necessitates dismissal of the Spencers' claim for punitive damages as a matter of law.

*First*, Steyr's argument that Tenn. Code Ann. § 29-39-102 requires dismissal of the Complaint's punitive damages claim is without merit. Steyr argues that § 29-39-102 limits compensation for "noneconomic" damages to amounts "not to exceed seven hundred fifty thousand dollars ($750,000)." (Doc. No 84-1 at 14). Per Steyr, the Complaint requests an amount

11

Case 2:20-cv-00033 Document 154 Filed 08/11/21 Page 11 of 14 PageID #: 3891

exceeding this limit by asking for relief "not to exceed Seven Million Five Hundred Thousand ($7,500,000) in punitive damages." (Id. (quoting Doc. No. 77 at 24)).

Steyr's argument fails because it incorrectly conflates "noneconomic" damages with "punitive" damages. Noneconomic damages and punitive damages are different forms of relief, addressed in different sections of the Tennessee Code. Compare Tenn. Code Ann. § 29-39-101 (defining noneconomic damages) with Tenn. Code Ann. § 29-39-104 (describing the circumstances under which punitive damages may be awarded). Noneconomic damages compensate plaintiffs for harms such as "physical and emotional pain," "mental anguish," and "loss of society, companionship, and consortium."[5] Tenn. Code Ann. § 29-39-101. Punitive damages, conversely, "are not compensatory in nature." Lindenberg v. Jackson Nat'l Life Ins. Co., 912 F.3d 348, 369 (6th Cir. 2018). Instead, they are "intended to punish the defendant for wrongful conduct and to deter others from similar conduct in the future." Id. at 362 (quoting Clanton v. Cain-Sloan Co., 677 S.W.2d 441, 445 (Tenn. 1984)). Steyr's argument that § 29-39-102 requires dismissal of the Spencers' demand for punitive damages fails because § 29-39-102 does not relate to punitive damages; it relates to noneconomic damages.

Setting aside § 29-39-102, the Court notes there is no limit on punitive damages anywhere else in the Tennessee Code that would require dismissal of any of the Spencers' claims. Previously, § 29-39-104 placed a limit on punitive damages. See Lindenberg, 912 F.3d at 364. However, the Sixth Circuit held that "§ 29-39-104 is unenforceable to the extent that it purports to

---

[5] The full definition of noneconomic damages, found in Tenn. Code Ann. § 29`39-101, is as follows: "'Noneconomic damages' means damages, to the extent they are provided by applicable law, for: physical and emotional pain; suffering; inconvenience; physical impairment; disfigurement; mental anguish; emotional distress; loss of society, companionship, and consortium; injury to reputation; humiliation; noneconomic effects of disability, including loss of enjoyment of normal activities, benefits and pleasures of life and loss of mental or physical health, well-being or bodily functions; and all other nonpecuniary losses of any kind or nature." Id.

12

cap punitive damage awards," because such a cap would "violate[] the individual right to a trial by jury set forth in the Tennessee Constitution." Id. at 364, 366; see also McClay v. Airport Mgmt. Servs., LLC, 596 S.W.3d 686, 693 n.6 (Tenn. 2020) ("While the instant case involves the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102, we acknowledge that the United State Court of Appeals for the Sixth Circuit . . . [has] held that the statutory cap on punitive damages in Tennessee Code Annotated section 29-39-104 violates the right to a jury trial under the Tennessee Constitution.").

*Second*, Steyr's argument that the Court must dismiss the claim for punitive damages under Tenn. Code Ann. § 29-39-104(c) is also without merit. Steyr asserts that, according to § 29-39-104(c), a "seller of a product other than the manufacturer shall not be liable for punitive damages, unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought." (Doc. No. 84-1 at 13). Because the Complaint plausibly alleges Steyr was a manufacturer of the LY426 Pistol and/or fits the TPLA's "substantial control" exception, § 29-39-104(c) does not require dismissal of its punitive damages claim.

*Third*, the cases cited by Steyr do not support dismissal of the demand for punitive damages. Steyr cites authority holding that "punitive damages are 'appropriate only in the most egregious cases and, consequently, a verdict imposing such damages must be supported by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously or recklessly.'" (Id. (quoting Goff v. Elmo Greer & Sons Const., Inc., 297 S.W.3d 175, 186 (Tenn. 2009))). Steyr argues the allegations in the Complaint "fail to assert any reckless conduct by Steyr that could be shown by clear and convincing evidence, which would entitle Plaintiffs to punitive damages against it." (Id. at 14).

13

Steyr's authority does not require dismissal because the Complaint has plausibly alleged reckless conduct on Steyr's behalf. An entity acts recklessly when it "is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). The Complaint asserts that Steyr and the Caracal Defendants failed "to provide notice to Dwayne Spencer of the unreasonably dangerous or defective condition of the [LY426 Pistol]" even after having recalled that model of handgun due to its faulty trigger mechanism. (Doc. No. 77 at 23). Viewed in the light most favorable to the Spencers, these allegations plausibly describe conduct that grossly deviates from the standard of care an ordinary person would exercise in the circumstances. See Cathey v. Johns-Manville Sales Corp., 776 F.2d 1565, 1569, 1571 (6th Cir. 1985) (holding the "trial court was correct in entering judgment upon the jury's award of punitive damages" in an "asbestos products liability case" because the "jury could have rationally believed" that the defendant's failure to "promptly warn the users of its asbestos-containing insulation products of possible health hazards" was a "wrongful act done . . . recklessly").

**IV.     CONCLUSION**

For the foregoing reasons, Steyr's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. No. 84) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE